IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BEN ROTEN, Plaintiff,

v.

DR. LAWRENCE MCDONALD, Defendant.

Civ. Action No. 08-081-JJF

---

Ben Roten, Pro Se Plaintiff, James T. Vaughn Correctional Center, Smyrna, Delaware.

James Edward Drnec, Esquire, Balick & Balick, LLC, Wilmington, Delaware. Attorney for Defendant.

---

**MEMORANDUM OPINION**

November 30, 2009
Wilmington, Delaware

**Farnan, District Judge**

Plaintiff Ben Roten, ("Plaintiff"), an inmate currently incarcerated at the James T. Vaughn Correctional Center ("VCC") filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. Plaintiff proceeds pro se and has been granted leave to proceed in forma pauperis. Presently before the Court is the Motion For Summary Judgment of Defendant Dr. Lawrence McDonald ("Defendant") and Plaintiff's opposition thereto. (D.I. 50.) For the reasons discussed below, the Court will grant Defendant's Motion For Summary Judgment.

## I. BACKGROUND

Plaintiff alleges he was inappropriately touched by Defendant in violation of his constitutional rights. More specifically, he alleges that on October 25, 2006, while housed at the Sussex Correctional Institution ("SCI"), Georgetown, Delaware, he presented for a routine check-up, and saw Defendant for a complete physical examination, who allegedly sexually molested him during the examination. After he filed a grievance, Defendant met with Plaintiff and attempted to explain why he had touched Plaintiff in the manner of which he complains.[1]

---

[1]Upon initial screening the Court dismissed Defendants Carl Danberg, Mike Deloy, Jill Mosser, and Director of CMS. (D.I. 13, 14.)

Plaintiff seeks compensatory and punitive damages. (D.I. 2, 17.)

The following facts are taken from the Complaint and other documents and exhibits submitted by the parties. Defendant was informed at the time of Plaintiff's chronic care visit on October 25, 2006, that Plaintiff was due for a complete physical. (D.I. 64.) As a result, Defendant performed a complete physical exam. (Id.) Plaintiff's journal written states as follows:

> Today on 10-25-06 I seen Dr. McDonald for a check up, when Dr. McDonald started [the] exam I noticed that he was not wearing gloves, when I ask him about the gloves he said that it is ok that [they are] for his protection.

(D.I. 51, ex. A.)

Defendant did not wear gloves at the time of the physical examination because he had no fear of any contact disease. (D.I. 47, resp. 8.) Plaintiff further writes,

> He then proceeded with the exam by telling me to remove my jumpsuit to the [waist] and to remove my tee shirt. He listened to me breathe, then he ask me to remove my jumpsuit and boxers and to lay back. He the[n] examined my pubic area and ask me if I had a hernia surgery and I told him yeah I had surgery that I thought he knew that, he acted like he didn't know about it, He then ask me to lift my left leg up and to hold them apart He then took my penis in one hand and pulled it to the right, while he cuffed my testicle in his other hand and rolled them around in a massaging motion.

(D.I. 51, ex. A.)

Plaintiff testified this took from fifteen to twenty seconds. (D.I. 51, ex. B, 14.) Plaintiff continued to write,

> He then told me to put my left leg down and to lift my right leg up. Then he took my penis in one hand and pulled it to the left while he cuffed my testicles in his other hand and rolled them in a massaging motion.

(D.I. 51, ex. A.)

Defendant explained the purpose of the exam as follows: "Holding each leg up and then pushing down on each leg is used to evaluate strength of legs and back. The genital exam includes palpating the testicles looking for masses, tenderness and presence and size of both testicles. The penis is positioned out of the way for the testicular exam. These are all common elements of a complete physical exam." (D.I. 47, resp. 10; D.I. 64.) Plaintiff testified this took from fifteen to twenty seconds, but it seemed like a long time. (D.I. 51, ex. B, 15.) Plaintiff went on to write,

> After that he told me to get dressed, and he went to write in his chart, And I told him that I urinate a lot and I was wanting to know if there was a problem. He then told me to pull my jumpsuit and boxers down past my knees and I did and I started to lay back on the exam table and he told me to just stand there and he rolled over in his chair and took my penis in his first two fingers and thumbs of each hand and then he squeezed down my penis in a milking motion until he got to the tip then he pulled the tip open with his thumbs and look in the pee hole.

(D.I. 51, ex. A.)

Defendant explained the purpose of this portion of the exam, as follows: "The palpation of the shaft of the penis is to look for points of pain or masses and to express any discharge which may be present. The inspection of the urethra is to look for inflammation or discharge. This is not part of a routine genital exam but was performed after Plaintiff . . . informed [] Defendant of his frequent urination problem . . . . Defendant's concern was for the presence of a venereal disease or infection and whether Plaintiff needed a urethral probe . . . . Defendant did order a urine culture." (D.I. 47, resp. 11, D.I. 64.) Plaintiff testified the last examination lasted more than thirty seconds to a minute. (D.I. 51, ex. B, 17.) After this, Plaintiff wrote that "he told me everything was OK to get dressed. I did not feel comfortable about the examination so I went to see mental health."[2] (D.I. 51, ex. A.) Plaintiff testified that he had never before had a physical examination like the one he received. (D.I. 51, ex. B, 17.)

Plaintiff testified that he was molested as a child and the incident revived the bad memories. (D.I. 51, ex. B, 54-56.) Plaintiff has spent time with mental health professionals as a

---

[2]In his journal Plaintiff writes that inmates call Defendant "Dr. FeelGood." (D.I. 32.)

result of the incident. (Id. at 54.) He now has bad dreams, has lost weight, and is depressed. (Id. at 57.)

Plaintiff wrote letters to physicians asking how they would handle a complaint about frequent urination. (D.I. 57, ex.) He specifically asked, "if a patient of yours came in and was complaining of frequent urination, what would be the standard procedure, and examination for that complaint, and what kind of test would you perform, if any." (Id.) Plaintiff testified that he wrote the letters in an effort to determine if other physicians would conduct an examination in the same manner as Defendant. (D.I. 51, ex. B, 32.) The Plaintiff's letters did not describe the examination as performed by Defendant. (D.I. 51, ex. B, 31-33.) Dr. Mark T. Edney ("Dr. Edney") and Dr. Robert L. Klaus ("Dr. Klaus") responded and gave a general description of what type of treatment might be provided for the condition as described by Plaintiff. (Id.) Plaintiff did not ask, and they did not indicate, if the examination procedure of Defendant was appropriate or inappropriate. (D.I. 51, ex. B, 31-33.)

On March 15, 2007, Dr. Elena Padrell ("Dr. Padrell") a board certified psychiatrist who worked at SCI, where Plaintiff was allegedly inappropriate touched, resigned from her position.

(D.I. 61.) She gave the following as one of several reasons for resigning:

> [D]uring my treatment sessions with patients I was told by several of them about a very serious matter concerning the possible sexual abuse of inmates by a medical colleague. . . . When I realized that nothing was going to be done to even look into those allegations, I felt I had to resign. . . .

(Id.)

Dr. Padrell was told by the Commissioner of the Delaware Department of Correction ("the Commissioner") that the claim was investigated by Internal Affairs and reviewed by the Medical Society of Delaware and determined to be unfounded. (Id.) Plaintiff testified that his claim of alleged sexually inappropriate contact was reviewed by the Delaware Board of Medical Practice ("the Board") to determine if Defendant had done anything inappropriate. (D.I. 51, ex. B, 24.) Contrary to the Commissioner's statement, the Board advised Plaintiff that his allegations were criminal in nature and outside its jurisdiction to investigate.[3] (D.I. 57, ex. C.)

Dr. James E. Moulsdale ("Dr. Moulsdale"), a board certified urologist, reviewed the Complaint, Plaintiff's medical records,

---

[3]The Court is troubled by Dr. Padrell's concerns and the discrepant accounts of the Commissioner and Plaintiff's testimony regarding the Board's actions, but notes that neither Dr. Padrell nor the Commissioner refer specifically to Defendant.

answers to interrogatories from Plaintiff and Defendant, Plaintiff's journal, and Plaintiff's deposition transcript. (D.I. 51, ex. D.) He opined, within a reasonable degree of medical certainty, that Defendant's physical examination of Plaintiff was medically appropriate. (Id.) Dr. Moulsdale states that "if Plaintiff's factual description is accurate and truthful, then there was nothing inappropriate about [Defendant's] physical examination." (Id.)

## II. STANDARD OF LAW

The Court shall grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986).

When determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from

which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Defendant moves for summary judgment on the grounds that there is no medical or legal basis on which to find in Plaintiff's favor. (D.I. 50.) Plaintiff opposes the Motion. (D.I. 57.)

## III. DISCUSSION

### A. Eighth Amendment

Defendant posits that "Plaintiff's claim appears to be an assault and/or battery claim." (D.I. 50.) The Complaint however, was filed pursuant to 42 U.S.C. § 1983. (D.I. 2.)

A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994). A prison official violates the Eighth Amendment when two requirements are met: "the deprivation alleged must be, objectively, 'sufficiently serious,'" and the prison official must have a "sufficiently culpable state of mind." Id. at 834.

Some circuits have recognized that severe or repetitive sexual abuse of a prisoner by a prisoner official can violate the Eighth Amendment. Boxer X v. Harris, 437 F.3d 1107, 1111 (11th Cir. 2006); Schwenk v. Hartford, 204 F.3d 1187, 1997 (9th Cir. 2000); Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998) ("With regard to . . . sexual assault claims, we have expressly acknowledged that an inmate has a constitutional right [under the Eighth Amendment] to be secure in her bodily integrity and free from attack by prison guards."); Boddie v. Schnieder, 105 F.3d 857, 961 (2d Cir. 1997)("allegations of sexual abuse may meet both the subjective and the objective elements of the constitutional test, thereby stating an Eighth Amendment claim under Section 1983.") "[S]exual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society." Boxer X, 437 F.3d at 1111. Not

every case of inappropriate touching will meet the two-prong test. Only severe or repetitive sexual abuse rises to the level of an Eighth Amendment violation. See Boddie, 105 F.3d at 861.

Plaintiff cannot meet either element of the two-prong test. The alleged inappropriate touching occurred during a physical examination and on only one occasion. Additionally, Dr. Moulsdale, after reviewing documents and Plaintiff's testimony, opined that the examination by Defendant was medically appropriate. Even taking Plaintiff's allegations as true, the Court finds that the facts do not allege abuse sufficiently serious to satisfy the required objective element.

Moreover, the conduct of which Plaintiff complains does not constitute the kind of "severe and repetitive" abuse or wanton and sadistic infliction of pain that rises to the level of an Eighth Amendment violation. See, e.g., Schwenk v. Hartford, 204 F.3d 1187 (9th Cir. 1999) (repeated requests for oral sex and attempted rape of inmate by prison guard may establish Eighth Amendment claim); United States v. Walsh, 194 F.3d 37 (2d Cir. 1999) (inmate who repeatedly steps on inmate's penis to wantonly inflict pain violates inmate's right to be free of cruel and unusual punishment); Berry v. Oswalt, 143 F.3d 1127 (8th Cir. 1998) (rape and harassment of inmate, including propositions, sexual comments, and attempts to perform nonroutine pat-downs

violated inmate's Eighth Amendment right to be free from cruel and unusual punishment).

Plaintiff's complaints are similar to conduct that has been held insufficient to establish an Eighth Amendment violation. See, e.g., Boxer, 437 F.3d at 1111 (a female prison guard's alleged solicitation of a male prisoner's manual masturbation, even under the threat of reprisal did not give rise to a claim under the Eighth Amendment); Washington v. Harris, 186 F. App'x 865, 866 (11th Cir. 2006) (not published) (inmate's allegations that he suffered momentary pain, "psychological injury," embarrassment, humiliation, and fear after he was subjected to officer's offensive and unwanted touching did not rise to the level of constitutional harms, and although officer's conduct was inappropriate and vulgar, it was not repugnant to humanity's conscience); Jackson v. Madery, 158 F. App'x 656, 661-62 (6th Cir. 2005) (not published) (allegation of rubbing and grabbing of prisoner's buttocks in a degrading manner did not amount to an Eighth Amendment violation); Joseph v. United States Fed. Bureau of Prisons, 232 F.3d 901, 2000 WL 1532783, at *1-2 (10th Cir. Oct. 16, 2000) (Table) (not published) (no Eighth Amendment violation where plaintiff alleged prison official "touched him several times in a suggestive manner and exposed her breasts to him"); Berryhill v. Schriro, 137 F.3d 1073 (8th Cir. 1998)

(touching of inmate's buttocks by prison employees, though inappropriate and sanctioned by prison, does not violate the Eighth Amendment); Boddie, 105 F.3d at 861 (verbal harassment and fondling of inmate's genitals by prison guard, though despicable, not sufficiently serious to establish Eighth Amendment violation).[4]

As to subjective element, Plaintiff must show that

---

[4]See also Robinson v. Davis, Civ. No. 3:06CV403/RV/EMT, 2009 WL 153162, at *13 (N.D. Fla. Jan. 22, 2009) (correctional officer's one-time touching of inmate's rear, even when combined with a threat of sexual battery, was not objectively harmful enough to establish an Eighth Amendment violation); Sharpe v. Costello, No. 1:06cv1493, 2007 WL 1098964, at *4 (M.D. Pa. Apr. 11, 2007) (guard's failed attempt to fondle prisoner and subsequent, isolated instances of verbal harassment did not rise to the level of a constitutional violation); Young v. Poff, No. 04-320, 2006 WL 1455482, at *4 (W.D.N.Y. May 22, 2006) (a single groping incident did not amount to an Eighth Amendment violation); Calhoun v. Vicari, No. 05-4167, 2005 WL 2372870, at *5 (D.N.J. Sept. 26, 2005) (sexual gestures, jokes, touching, and slapping on the buttocks were insufficiently serious to state an Eighth Amendment claim); Williams v. Anderson, No. 03-3254, 2004 WL 2282927, at *4 (D. Kan. Sept. 7, 2004) (no Eighth Amendment violation where prison guard grabbed plaintiff's buttocks, exposed his penis to plaintiff, and made crude sexual remarks); Buckley v. Dallas County, No. 397-CV-1649BC, 2000 WL 502845, at *5 (N.D. Tex. Apr. 27, 2000) (prison guards' fondling of inmate in an inappropriate manner while conducting a routine pat-down search and stopping when inmate did not become excited does not violate Eighth Amendment; Nelson v. Michalko, 35 F. Supp. 2d 289 (W.D.N.Y. 1999) (use of hand-held metal detector to touch inmate's "anal area" during lawful frisk does not violate Eighth Amendment); Jones v. Culinary Manager II, 30 F. Supp. 2d 491, 493, 497-98 (E.D. Pa. 1998) (allegation that a guard pinned plaintiff to box, ground his pelvis against plaintiff's buttocks, and threatened sex was not sufficiently serious to be an Eighth Amendment violation).

Defendant, who allegedly touched him in an inappropriate manner, did so with a sufficiently culpable state of mind. Defendant submitted a sworn affidavit, that the physical examination was part of a routine genital exam and consisted of all common elements of a complete physical exam. (D.I. 64.) Defendant states that the second part of the exam was not routine, but that the scope of the exam was expanded after Plaintiff complained of frequent urination. (Id.) A complete physical exam is required for inmates in the prison system, failure to perform said exam could constitute deliberate indifference or breach the standard of care, and failure to investigate Plaintiff's complaint of frequent urination would not have been good medical practice. (Id.) By his affidavit, Defendant negates the second element of Plaintiff's Eighth Amendment claim.

The Court finds that Defendant's alleged conduct to be similar to the type of conduct that has been held insufficient to establish an Eighth Amendment violation. Nor has Plaintiff demonstrated a genuine issue of material fact for trial. For the above reasons, the Court will grant Defendant's Motion For Summary Judgment.

**B. Supplemental Claims**

As discussed above, summary judgment is appropriate as to Plaintiff's federal claim. To the extent Plaintiff raises a

supplemental State claim for assault and/or battery, the Court declines to exercise jurisdiction. 28 U.S.C. § 1367; De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003).

**IV. CONCLUSION**

For the above reasons, the Court will grant Defendant's Motion For Summary Judgment and will decline to exercise jurisdiction over Plaintiff's supplemental claim.

An appropriate Order will be entered.